48 So.2d 761

**FIORELLA v. CITY OF BIRMINGHAM.**

6 Div. 825.

Court of Appeals of Alabama.

May 9, 1950.

Rehearing Denied June 20, 1950.

386

Gibson & Hewitt, of Birmingham, for appellant.

Chas. H. Brown, Asst. City Atty., of Birmingham, for appellee.

HARWOOD, Judge.

This appellant stands convicted of violating an ordinance of the City of Birmingham pertaining to policy games.

The complaint filed against the appellant in the circuit court, omitting the formal parts, charges that appellant, "within twelve

months before the beginning of this prosecution, and within the City of Birmingham or the police jurisdiction thereof, did possess tickets, writings, papers, articles, matters, or things of a nature or kind, which are customarily or usually used in the operation of a lottery, policy game, or other game of chance, contrary to and in violation of Section 600 of the General City Code of Birmingham of 1944."

■ A demurrer, supported by a large number of grounds, was filed to this complaint. Only two of these grounds are argued in appellant's brief. This being an appeal from a conviction for violation of a city ordinance, it is quasi criminal, and subject to the rules governing civil appeals. Jackson v. City of Mobile, 33 Ala. App. 95, 30 So.2d 40. We shall therefore limit our review to the errors specified in appellant's brief.

Several grounds of demurrer argued jointly in appellant's brief assert that the complaint is conclusionary in character, in that it does not sufficiently allege which part or parts of the ordinance was violated.

■ Complaints highly similar to the present one have, in regard to the alleged fault existing in the present complaint, been held sufficient. We see no reason for departing from this conclusion. Stinson v. City of Birmingham, 31 Ala.App. 577, 20 So.2d 113, certiorari denied 246 Ala. 232, 20 So.2d 114; Brooks v. City of Birmingham, 31 Ala.App. 579, 20 So.2d 115, certiorari denied 246 Ala. 232, 20 So.2d 118.

■ The other grounds of demurrer argued by appellant assert the unconstitutionality of the ordinance under which appellant was convicted, as being violative of the Fourteenth Amendment of the Constitution of the United States, and Section 6 of the Constitution of Alabama of 1901.

Appellant argues that the ordinance is unreasonable and arbitrary and therefore unconstitutional in that the possession of various sorts of innocent papers, and slips, in common every day use, would be in violation of the ordinance.

This very point was considered by us, on rehearing, in the recent case of City of Birmingham v. Reed, Ala.App., 44 So.2d 607, at pages 613, 614. In said opinion we set out in haec verba Section 600, supra, and the reasons for our conclusions that Section 600, supra, was not invalid on this asserted ground. We will, in the interest of brevity, refrain from again setting forth the statute and our conclusions in this regard in this opinion. We do however adopt our conclusions in this regard in this opinion. While the Supreme Court, 44 So.2d 614, on certiorari denied the writ in the Reed case, supra, the conclusion was expressed that the constitutionality of Section 600, supra, was not before us, though the Supreme Court stated that such conclusion did not indicate an expression of disagreement with our conclusion as to the constitutionality of the ordinance now being considered.

■■ In the present case it is asserted additionally that the ordinance is unconstitutional because discriminatory, in that a portion of the ordinance provides: "The possession forbidden by this section shall not apply to a possession had by a police officer, sheriff, deputy sheriff or other peace officer, judge or attache of a court or an attorney, when such possession is connected with the prosecution or investigation of a violation of this section * * *."

Appellant's counsel argues that if a defense attorney, in investigating or trying a case involving the articles mentioned in the ordinance handled the said articles, if only for a moment, he would be guilty of violating the ordinance.

A reasonable construction of the above portion of the ordinance we think clearly permits an attorney, whether for the state, or for the defense, to possess such articles "When such possession is connected with the prosecution or investigation of a violation" of the section. "Prosecution" is but the processing of a criminal judicial proceeding.

■ It is further contended that the portion of Section 600, supra, providing that—"but the burden of offering evidence that the accused's possession is under this exception shall rest upon the accused" misplaces the burden of proof and is violative of due process of law.

388

The effect of such provision is merely to make possession of the mentioned article prima facie evidence of violation of the ordinance. It is not conclusive evidence. Such rule of evidence is often created in our State statutes, particularly those dealing with intoxicating liquors, and has been held to be within the legislative power. Fitzpatrick v. State, 169 Ala. 1, 53 So. 1021. We see no reason why the governing body of a city cannot make similar provisions.

■ For the City Henry Darnell, and W. E. Coleman, detectives for the Birmingham Police Department, and with many years experience as members of the gambling detail of said department, testified that from a truck in which they had secreted themselves they observed the appellant get out of an automobile and start toward a house. Some Negroes motioned to appellant with their arms and he turned and made a circle around some nearby hedge bushes. He had a sack tucked under his arm as he started toward the house, but did not have it when he returned to his automobile.

Mr. Coleman went to the hedge around which appellant had circled and found a sack caught in a fork in the bush. It was the judgment of both witnesses for the city that this was the sack carried by appellant. The sack contained 74 plastic balls. All of these balls except one were numbered. One was blank. Two more plastic balls numbered 12 and 57 were found in appellant's automobile. These numbers fit into the set of balls found in the sack.

Both of these detectives, after their knowledge gained from years of experience with the gambling detail had been established, testified that these balls were of a type customarily used in the operation of a policy game.

In his own behalf the appellant testified that he had gone to the scene of his arrest looking for a colored man named Ed White. He left his car, and walked around the hedge bush. He learned White had moved from the neighborhood, and returned to the car. He denied he had a sack under his arm when he first left his car.

Appellant saw the officers find the two balls in the automobile, but claimed he knew nothing of their being in the car as he had borrowed it.

It is our opinion that the evidence presented by the City, if believed by the jury under the required rule, was ample in its tendencies to support the verdict rendered.

■■ At the opening of this trial the court made the following statement: "May I say this to this panel of the jury: The matter before you comes by virtue of a law which allows any person convicted in the Recorder's Court to appeal his case into the Circuit Court, to be tried de novo, by a jury of his peers, and the matter before you, in short, is a complaint by the City of Birmingham that"—etc. (here the court stated the substance of the complaint).

At the conclusion of the court's statement appellant moved "that this venire be released or discharged and a new one be brought in, on the ground that your honor stated that the defendant had been convicted in the Recorder's Court."

The motion was denied and appellant excepted.

The court's statement was but an explanation to the jury of the basis of jurisdiction of the circuit court to try this cause, initiated in the name of the City of Birmingham. The circuit court's jurisdiction arose solely by virtue of appellant's conviction in the Recorder's Court. Stinson v. City of Birmingham, 31 Ala.App. 577, 20 So.2d 113. It was a correct statement of law, which is presumptively known to every person. Certainly the statement did not reflect any bias or prejudice on the part of the court, nor do we believe the appellant was probably injured in his substantial rights by reason of the statement.

■■ During the cross examination of the City's witness Darnell the court sustained the City's objection to the following question: "And with reference to lotteries, any raffle or game of chance is defined as a raffle isn't it. For instance, if I decided to raffle off my watch and sold chances, that is a lottery, technically, under the law, isn't it?"

The objection was properly sustained. As stated in 20 Am.Jur., Sec. 799, supported by abundant citation of authority: "It may

be laid down as a general rule that a witness is never permitted to give his opinion on a question of law or upon matters which involve a question of law. This rule is applicable to both expert and non expert witnesses." See also Alabama Fuel & Iron Co. v. Adams, Rowe & Norman, 216 Ala. 403, 113 So. 265. The reason for such rule is that conclusions of law are exclusively for the courts.

■ Further during the cross examination of the witness Darnell the record shows the following occurrence:

"Mr. Gibson: I will ask Your Honor to instruct this witness not to make a speech and not to answer out of turn—he is very—

"The Court: He is a better witness than I am, probably. I wouldn't know how to lay down a blue print, Mr. Gibson. Simply ask one question and one answer at a time.

"Mr. Gibson: That is exactly what I would like, Your Honor, but that is not what I am getting.

"Mr. Brown: Well, now, if the court please,—

"The Court: Now, then, gentlemen, I don't care to go into an argument.

"Mr. Gibson: I just want to proceed with the examination. We except."

Counsel contends that the above statement by the court tends to bolster the testimony of the witness, and was therefore improper. The witness had previously given rather detailed testimony as to various types of lotteries and gambling games. Certainly nothing in his answers evinced any effort on this witness' part to "make a speech." The statement by the court was in reply to and invited by this charge. While defense counsel reserved an exception, it is not clear to us under the state of the record to just what counsel was excepting. Certainly we are unwilling to base a reversal of this cause on this incident. Supreme Court Rule 45, Code 1940, Tit. 7 Appendix.

■ ■ No error resulted in overruling appellant's objection to questions propounded to the City's witnesses as to whether they saw any one make a sign or signal to the defendant as he walked toward a house after getting out of his automobile. The

allowance of leading questions is largely within the discretion of the trial court, and the answers sought were merely a shorthand rendition of facts.

■ Likewise we do not think the court erred in overruling appellant's motion to exclude the statement "as though to motion" from the witness Darnell's answer to such questions that "A negro threw up his hand just as though to motion." The phrase "just as though to motion" we think illustrative of the manner in which the hand was thrown up rather than an attempt to testify as to the intent of the person waving.

■ During the course of the argument to the jury of the attorney for the City the record shows the following occurrence:

"Mr. Brown: We have brought you here the evidence of a drawing, the top man,—

"Mr. Gibson: If Your Honor please, now I object—

"Mr. Brown: —he is the man that conducts the lottery.

"Mr. Gibson: —to his reference to the top man, as the man that conducts the lottery, because it is not supported by the evidence; it is highly prejudicial.

"Mr. Brown: You know more than I do—

"Mr. Gibson: And that statement with reference to I know as well as he does. If Your Honor please, I object to that statement as being highly improper,—

"The Court: Well, leave it out; leave it out.

"Mr. Gibson: —and at this time—

"Mr. Brown: I didn't tell him, Judge. I said he knows more about it than I do; if I don't—

"Mr. Gibson: —I make a motion at this time for a mistrial.

"The Court: Overruled.

"Mr. Gibson: We except."

Since under the evidence presented by the City it could be reasonably inferred that the appellant was caught in possession of paraphernalia to be used in the drawing in a policy game, at least part of the argument was based on a reasonable inference from the evidence. The objection

went to the entire statement by the City's attorney. The court stated "Leave it out, leave it out," which in effect sustained appellant's objection. No objection was made during the remainder of the colloquy, though a motion for a mistrial was interposed. This is not sufficient to warrant a review of the latter portion of the argument. McDonnell v. State, 28 Ala.App. 25, 177 So. 351.

■ Even so, all of the above colloquy was probably valued by the jury at its true worth. Arant v. State, 232 Ala. 275, 167 So. 540. In view of the court's statement to leave it out, as to the first portion of the argument, and the strong tendency of the City's evidence to establish appellant's guilt of the offense charged, the actual injurious element of the above argument is too speculative to warrant a reversal.

■ Appellant's requested charge 12 was refused without error as the principle enunciated by it was substantially covered by other charges given at appellant's request.

■ Appellant's requested charge 14 was properly refused as it pretermits a consideration of the evidence as a basis for reasonable doubt. Brown v. State, 22 Ala. App. 290, 115 So. 68; Morris v. State, 34 Ala.App. 511, 42 So.2d 596.

Other points are argued in appellant's brief. Some of these points are governed by principles already discussed. The others are in our opinion without merit and do not invite any discussion.

It is our conclusion that this record is free of error probably injuriously affecting the substantial rights of this appellant. This cause is therefore due to be affirmed, and it is so ordered.

Affirmed.

## On Rehearing.

In his brief in support of his application for rehearing counsel for appellant writes that we "inadvertently failed to refer to that portion of section 600 of the 1944 General Code of the City of Birmingham which constitutes the most flagrant violation of the Constitution of the United States and of the State of Alabama, and that part is hereinafter set out: "'It shall not be a defense to the charge of possessing the ticket, writing, paper, slip, document, memorandum, list, article, matter or thing, that it or any of them so possessed have not actually been used or were not then being used, or were not intended to be used, in the operation or in connection with the operation of a lottery, policy game or other game of chance.'"

Our failure to discuss the above point was not through inadvertence, but because the point had, in our opinion, been discussed and answered in the opinion in City of Birmingham v. Reed, supra. We are, however, at the insistence of appellant's earnest counsel, glad to comply with his request that this point be further discussed.

The total effect of that portion of the ordinance complained of is merely to make illegal the possession of the articles mentioned, (and which from the ordinance as a whole are articles customarily or usually used in the operation of a lottery) regardless of intent or knowledge of the possessor.

■ It is perfectly permissible for a legislative body to make the doing of an act criminal without regard to the intent or knowledge of the doer, and if such legislative intent appears, the courts must give it effect, although the intent of the doer may have been innocent. Such principle is particularly applicable to enactments passed as police measures. Smith v. State, 223 Ala. 346, 136 So. 270; Allen v. State, 33 Ala.App. 70, 30 So.2d 479.

■ Nor is the punishment of a person for an act prohibited by law a denial of due process of law merely because the accused is ignorant of the facts making it so, for a governing body "may in the maintenance of a public policy provide 'that he who shall do them shall do them at his peril and will not be heard to plead in defense good faith or ignorance.' Many instances of this act are to be found in regulatory measures of what is called the police power where the emphasis of the statute is evidently upon achievement of some social betterment rather than the punishment of the crimes as in cases of mala in se." Taft, C. J., in United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 302, 66 L.Ed. 604.

Writing to a point highly similar to the one now being considered, the Court of Appeals of Maryland in Ford v. State, 85 Md. 465, 37 A. 172, 175, 41 L.R.A. 551, 60 Am.St.Rep. 337, made the following observation which we think is perfectly applicable to the present question: "But it is contended that the statute deprives the accused of the right of trial by jury, and of his constitutional guaranty that he be not deprived of his liberty without due process of law. But the fallacy of the argument is in assuming that it does interfere with those rights. He had the perfect right to prove either that the articles charged in the indictment were not found in his possession, or that those found were not such as the law prohibited him from having. That is the issue made by the statute. It does not deprive him of the presumption of innocence to which he is entitled, but it does make it a crime for him to have in his possession that which is of no lawful use in this state, and which injuriously affects the morals and interferes with the welfare of the people; and it is evident that the statute has made the mere possession of the articles a crime, because that is the most effectual way to break up the lottery business".

The other points raised by appellant in his application have in our opinion been disposed of in the original opinion, and no further discussion is indicated.

Application Denied.